## ORDER

## In re Fink

*Linda J. Peltier*, for petitioner.

GREEVY, *P. J.*, April 2, 1976—Petitioner, Candace Marie Fetzer, filed a petition for the change of name of her daughter from Betty Jo Fink to Betty Jo Fetzer. Betty Jo Fink was born on April 12, 1974, during the marriage of petitioner and Dana Lynn Fink. Dana Fink is also the natural father of Betty Jo's twin sisters, Billie Jo Fetzer and Bobbie Jo Fetzer, born May 26, 1973, which was shortly before petitioner and Dana Fink were married on August 14, 1973.

Petitioner and Dana Fink were divorced by decree of the Lycoming County Court of Common Pleas on June 19, 1975, and on July 14, 1975, petitioner filed a notice of election to retake maiden name in the office of the Prothonotary of Lycoming County, in accordance with the provisions of the Act of May 25, 1939, P.L. 192, as amended, 23 P.S. §98.

All three children are in the custody of petitioner. Dana Fink is under a court order to provide support for the children, and he has visitation rights with the children.

" 'In this Commonwealth an individual cannot change his name without permission of the appropriate court acting upon a petition complying with the statutory requirements. In granting or refusing

the petition after due hearing and notice the court has wide discretion. If there is "lawful objection" to the granting of the petition it will be denied. If there is no such lawful objection the petition may be granted. Under certain circumstances a court even in the absence of lawful objection should deny such a petition. . . . Whenever a court has discretion in any matter (as it has in the matter of a change of name) it will exercise that discretion in such a way as to comport with good sense, common decency and fairness to all concerned and to the public (citation omitted)'": In re Petition of James Albert Rocuskie, 41 Northumb. 80, 82 (1969); Act of April 18, 1923, P.L. 75, sec. 3, 54 P.S. §3.

"A 'lawful objection' is one which defeats the petition as a matter of law, such as the failure to advertise as required by the Act, or the insanity of the petitioner, or improper venue and the like": Rocuskie, supra, at pp. 82-83.

The Act of April 18, 1923, P.L. 75, sec. 2, as amended, 54 P.S. §2, provides:

"Any person desiring to change his or her name shall file a petition in the courts of common pleas of the county in which he or she shall reside, setting forth such desire and intention and the reason therefor . . ."

Rule 2027 of the Pennsylvania Rules of Civil Procedure provides:

"When a minor is a party to an action he shall be represented by a guardian who shall supervise and control the conduct of the action in behalf of the minor."

The petition in the instant case was brought for Candace M. Fink, a minor, by Flora Fetzer, her mother. The petition should have been brought by

the person whose name is sought to be changed. In other words, the petitioner should have been Betty Jo Fink, by her guardian. A lawful objection exists in this case wherein the petition was brought in the name of the child's mother rather than in the name of the child, and, because there exists a lawful objection, we must refuse the petition for change of name.

Moreover, if there had been no lawful objection, we would exercise our discretion to deny the petition under the facts of this case.

Dana Fink appeared at the hearing to oppose the petition for change of name, stating, "I want her to have my name, she is my daughter, I would rather have the other two in my name." Mr. Fink owes arrearages in his support payments, but he testified that those arrearages stemmed from economic difficulties. He made regular bi-weekly support payments in March, April, May, June, July and August of 1975. He then missed paying during the months of September, October and November because he had just remarried and was far behind in paying his bills; however, he resumed making his support payments in December 1975. This spotty support payment record is indicative of Mr. Fink's inability at times to meet this financial burden, but, in view of the resumption of such payments, we do not find that the period of nonpayment evidences any desire to completely sever what remains of the parental relationship.

"In all cases affecting children, they are the ones to be kept in mind by the Court in disposing of such cases.": Rocuskie, supra, at page 83. Thus, the individual to consider in the case at hand is the child, Betty Jo Fink. Our decision must not be based upon any discomfort or embarrassment experi-

enced by the child's parents. The purpose of our examination of the conduct of the father is to determine whether granting the petition for change of name might tend to destroy a parental relationship where that relationship might be beneficial to the child. It must be kept in mind that Betty Jo Fink is presently less than two years old, far from school age and too young to feel any embarrassment merely because of having a different surname from her mother.

There has been insufficient proof that the child's surname creates any serious difficulty in obtaining prescriptive medications. It is not at all uncommon for a child to have a different surname than one of its parents. While such a situation could conceivably create occasional inconveniences for the parent, although no evidence of any specific instances of such were introduced at the hearing, we are not convinced that the welfare of the child would be in any way threatened thereby. Candace Marie Fetzer created the present situation by electing to retake her maiden name, the court will not sanction changing the child's surname simply for the benefit of the child's mother.

The facts of the instant case in many ways parallel the facts of Rounick's Petition, 47 D. & C. 71 (1942). In that case, the court refused to grant the petition for change of name of a young boy despite the facts that the boy was of school age and stated his desire for the change, that the boy's mother had been his sole support for six years, and that the father had not seen the child in the last six years. The father in Rounick had been frustrated by the child's mother in his efforts to visit the child, a factor not present in the instant case, but the language and holding of that case are instructive:

"To decree a change of name would simply be another step in the direction, encouraged by the mother, of complete severance of the father-child relationship . . .

"We do not here decide that in all cases an infant's petition by his mother and guardian, opposed by the father, will be dealt with likewise, for after all, the matter is one of application of the sound discretion of the court on the facts of each case. We can conceive, for example, where a father by complete abandonment of a child or other improper conduct would lose all right successfully to object to an infant's petition for change of name. But that is not this case: The father has sought to visit his child and asserts his interest in his son and his desire to preserve a parental relationship. And so, exercising our discretion, consonant with an important consideration of public policy, we dismiss the petition; we at least place no further barrier in the way of the father reestablishing himself in the affection of his son.

"We think it better to let this case rest until the minor knows his own mind and the father has had further opportunity to pursue his professed desire to retain a place in the child's life. If later the child again seeks the change, we will be in better position to entertain the expression of his desire.": Rounick, supra, at p. 76.

In the instant case, we are convinced that the interests of the child are best served by our denying the petition for change of name at this time. The infant is less than two years of age, unaware of the import of these proceedings and too young to feel embarrassed by her surname being different than that of her mother's. While Dana Fink has not been a good father during the last year, his conduct has

not reached the stage of abandonment. We will not lend the court's aid to "the estrangement of father and child" by granting this petition: Rounick, at pages 75, 76. It would not be in the child's best interest for the court to place a further obstacle in the way of the father's reestablishing a role in his daughter's life.

When the child approaches school age, circumstances may make the granting of such a petition proper at some later date, but today we affirm our order of February 13, 1976, dismissing the petition for change of name without prejudice.